IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | I N D I C T M E N T |
| | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | Violation:  21 U.S.C. §§ 331(a), 333(a)(1), |
| | ) | 352, 812, 813, 841(a)(1), 841(b)(1)(C), |
| CHARLES WILLIAM CARLTON; | ) | 846, 853, 952(a), 960(b)(3), and 963; |
| JOHN ROBERT POLINSKI; | ) | and 18 U.S.C. §§ 371 and 2 |
| BYRON JOSEPH LANDRY, | ) | |
| a/k/a TRIPLESCREW; and | ) | |
| RYAN BURTON LANE | ) | |

**Conspiracy to Possess with Intent to Distribute and Distribute Controlled
Substances and Controlled Substance Analogues Resulting in Serious Bodily
Injury and Death**

The Grand Jury Charges:

From in or about January 2011 through August 2012, in the Districts of North

Dakota, Minnesota, Mississippi, Southern District of Texas, and elsewhere,

CHARLES WILLIAM CARLTON;
JOHN ROBERT POLINSKI;
BYRON JOSEPH LANDRY, a/k/a TRIPLESCREW; and
RYAN BURTON LANE

did knowingly and intentionally combine, conspire, confederate, and agree together with

Andrew Michael Spofford, et al., currently indicted in the District of North Dakota,

Southeastern Division, Case No. 3:12-cr-80, and others, both known and unknown to the

grand jury, to possess with intent to distribute and distribute the following controlled

substance analogues, as defined in 21 U.S.C. § 802(32), knowing the substances were

intended for human consumption as provided in 21 U.S.C. § 813:

1.  N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, a controlled substance analogue of 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance;

2.  4-Chloro-2,5-dimethoxy-amphetamine, also known as DOC, a controlled substance analogue of 2,5-Dimethoxy-4-methyl-amphetamine, also known as DOM, a Schedule I controlled substance;

3.  2-(Ethylamino)-2-(3-methoxyphenyl)cyclohexanone, also known as MXE or Methoxetamine, a controlled substance analogue of N-ethyl-1-phenylcyclohexylamine, also known as 3-Eticyclidine or PCE, a Schedule I controlled substance;

4.  6-(2-Aminopropyl)-2,3-dihydrobenzofuran, also known as 6-APDB, a controlled substance analogue of MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance;

5.  1-(1-Benzofuran-6-yl)propan-2-amine, also known as 6-APB, a controlled substance analogue of MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance;

6.  4-Acetoxy-N, N-dimethyltryptamine, also known as 4-AcO-DMT, a controlled substance analogue of Psilocyn (4-hydroxy-N,N-dimethytriptamine), a Schedule I controlled substance;

7.  4-Fluoro-amphetamine, also known as 4-FA, a controlled substance analogue of amphetamine, a Schedule II controlled substance;

8.  4-Fluoro-methamphetamine, also known as 4-FMA, a controlled substance analogue of methamphetamine, a Schedule II controlled substance;

9.  2-Fluoro-amphetamine, also known as 2-FA, a controlled substance analogue of amphetamine, a Schedule II controlled substance;

10.  2-Fluoro-methamphetamine, also known as 2-FMA, a controlled substance analogue of methamphetamine, a Schedule II controlled substance;

11.  5-Methoxy-N,N-diallytryptamine, also known as 5-MeO-DALT, a controlled substance analogue of 5-Methoxy-N,N-diisopropyltryptamine (5-MeO-DiPT), a Schedule I controlled substance;

12.  N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine, also known as 2C-C-NBOMe or 25C-NBOMe, a controlled substance analogue of 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance;

13.  4-Methyl-N-Ethylcathinone, also known as 4-MEC, a controlled substance analogue of Methcathinone, a Schedule I controlled substance;

14. 2-(Methylamino)-1-phenyl-pentane-1-one, also known as Pentadrone, a controlled substance analogue of Methcathinone, a Schedule I controlled substance;

15. 4'-Methyl-pyrrolidinopropiophenone, also known as MePPP, a controlled substance analogue of Methylenedioxypyrovalerone (MDPV), a Schedule I controlled substance;

16. alpha-Pyrrolidinopentiophenone, also known as PVP, a controlled substance analogue of  Methylenedioxypyrovalerone (MDPV), a Schedule I controlled substance; and

17. Additional analogues of  2,5-Dimethoxy-4-bromophenethylamine, which is known as 2C-B, a Schedule I controlled substance, which includes, but is not limited to:  2C-E, 2C-C, 2C-I, 2C-H, and 2C-P, which after July 9, 2012, became Schedule I controlled substances as part of the Food and Drug Administration Safety and Innovation Act.

The distribution of and N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, resulted in serious bodily injury and death.

As a further part of this conspiracy, the above-named defendants also did knowingly and intentionally combine, conspire, confederate, and agree together with others, both known and unknown to the grand jury, to possess with intent to distribute and did distribute the following controlled substances:  cocaine, a Schedule II controlled

substance; marijuana, a Schedule I controlled substance; ecstacy (3,4-methylene-dioxymethamphetamine - MDMA), a Schedule I controlled substance; MDA (3,4-methylenedioxyamphetamine), a Schedule I controlled substance; 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance; 2,5-Dimethoxyphenethylamine, also known as 2C-H, a Schedule I controlled substance; 2,5 Dimethoxy-4-Propylphenethylamine, also known as 2C-P, a Schedule I controlled substance; and Psilocyn, a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 812, 813, 841(a)(1), and 841(b)(1)(C), and Title 18, United States Code, Section 2.

Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, within the states of North Dakota, Minnesota, Texas, Mississippi, and elsewhere;

2.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine, also

known as 2C-C-NBOMe or 25C-NBOMe, within the states of North Dakota, Minnesota, and elsewhere;

3.   On or about June 4, 2012, the distribution of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, resulted in the hospitalization of S.D.N. in Grand Forks, North Dakota;

4.   On or about June 11, 2012, the distribution N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, resulted in the death of C.A.B. in Grand Forks, North Dakota;

5.   On or about June 11, 2012, the distribution of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, resulted in serious bodily injury to C.L.J. in Grand Forks, North Dakota;

6.   On or about June 13, 2012, the distribution of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, resulted in the hospitalization of W.R.S. in Grand Forks, North Dakota;

7.   On or about June 13, 2012, the distribution of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, resulted in the death of E.R.S. in East Grand Forks, Minnesota;

8.   It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 4-Chloro-2,5-Dimethoxy-amphetamine, also known as DOC, a

6

controlled substance analogue of 2,5-Dimethoxy-4-methyl-amphetamine, also known as DOM, a Schedule I controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

9.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 6-(2-Aminopropyl)-2,3-dihydrobenzofuran, also known as 6-APDB, a controlled substance analogue of  MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

10.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 1-(1-Benzofuran-6-yl)propan-2-amine, also known as 6-APB, a controlled substance analogue of MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

11.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 4-Acetoxy-N, N-dimethyltryptamine, also known as 4-AcO-DMT, a controlled substance analogue of Psilocyn (4-hydroxy-N,N-dimethytriptamine), a Schedule I controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

12.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 2-Fluoro-amphetamine, also known as 2-FA, a controlled substance analogue of amphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

13.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 2-Fluoro-methamphetamine, also known as 2-FMA, a controlled substance analogue of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

14.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 4-Fluoro-amphetamine, also known as 4-FA, a controlled substance analogue of amphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

15.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 4-Fluoro-methamphetamine, also known as 4-FMA, a controlled substance analogue of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

8

16.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 5-Methoxy-N,N-diallytryptamine, also known as 5-MeO-DALT, a controlled substance analogue of 5-Methoxy-N,N-diisopropyltryptamine (5-MeO-DiPT), a Schedule I controlled substance, within the states of North Dakota, Minnesota, Texas, and elsewhere;

17.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount 4-Methyl-N-Ethylcathinone, also known as 4-MEC, a controlled substance analogue of Methcathinone, a Schedule I controlled substance, within the states of Mississippi, Texas, and elsewhere;

18.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 2-(Methylamino)-1-phenyl-pentane-1-one, also known as Pentadrone, a controlled substance analogue of Methcathinone, a Schedule I controlled substance, within the states of Mississippi, Texas, and elsewhere;

19.  It was a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing a detectable amount of 4'-Methyl-pyrrolidinopropiophenone, also known as MePPP, a

controlled substance analogue of Methylenedioxypyrovalerone (MDPV), a Schedule I

controlled substance within the states of Mississippi, Texas, and elsewhere;

20.  It was a part of said conspiracy that the defendants and others would

and did possess with intent to distribute and did distribute a mixture and substance

containing a detectable amount of alpha-Pyrrolidinopentiophenone, also known as PVP, a

controlled substance analogue of Methylenedioxypyrovalerone (MDPV), a Schedule I

controlled substance within the states of Mississippi, Texas, and elsewhere;

21.  It was a part of said conspiracy that the defendants and others would and did

possess with intent to distribute and did distribute additional analogues of  2,5-Dimethoxy-

4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance, which

includes, but are not limited to:  2C-E, 2C-C, 2C-I, 2C-H, and 2C-P, which after July 9,

2012, became Schedule I controlled substances as part of the Food and Drug

Administration Safety and Innovation Act;

22.  It was a part of said conspiracy that the defendants and others would and did

possess with intent to distribute and did distribute a mixture and substance containing a

detectable amount of Etizolam.  The purpose of distributing Etizolam was to counteract

any negative effects of the various hallucinogens distributed as part of this conspiracy;

23.  It was a part of said conspiracy that the defendants and others would and did

possess with intent to distribute and did distribute a mixture and substance containing a

detectable amount of  marijuana, ecstacy (MDMA), MDA, Psilocyn, and 2,5-Dimethoxy-

4-bromophenethylamine, also known as 2C-B, all Schedule I controlled substances, and cocaine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, and elsewhere;

24.   On or about April 30, 2012, in the District of Mississippi, BYRON JOSEPH LANDRY, a/k/a TRIPLESCREW, possessed with the intent to distribute the following:

A.   A mixture and substance containing a detectable amount of 4-Methyl-N-Ethylcathinone, also known as 4-MEC, a controlled substance analogue of Methcathinone, a Schedule I controlled substance;

B.   A mixture and substance containing a detectable amount of 2-(Methylamino)-1-phenyl-pentane-1-one, also known as Pentadrone, a controlled substance analogue of Methcathinone, a Schedule I controlled substance; and

C.   A mixture and substance containing a detectable amount of N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine, also known as 2C-I-NBOMe or 25I-NBOMe, a controlled substance analogue of  2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance.

25.  On or about August 24, 2012, in the Southern District of Texas, CHARLES WILLIAM CARLTON possessed with the intent to distribute 2,5 Dimethoxy-4-Propylphenethylamine, also known as 2C-P, a Schedule I controlled substance;

26.  On or about August 24, 2012, in the Southern District of Texas, CHARLES WILLIAM CARLTON possessed with the intent to distribute 2,5-Dimethoxy-phenethylamine, also known as 2C-H, a Schedule I controlled substance;

27.  It was further a part of said conspiracy that the defendants and others would and did attempt to conceal their activities;

28.  It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities;

29.  It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions;

30.  It was further a part of said conspiracy that the defendants and others would and did distribute controlled substance analogues and controlled substances to juveniles;

31.  CHARLES WILLIAM CARLTON used an internet based business named Motion Resources LLC, also known as Motion Research and Resources in Motion, located in Houston, Texas, to facilitate the unlawful importation of controlled substance analogues from various countries including, but not limited to:  China, United Kingdom, Austria, Poland, Greece, Spain, and Canada.  These substances were then unlawfully distributed all over the United States; and

12

32.  CHARLES WILLIAM CARLTON was a leader, organizer, manager, and supervisor in this conspiracy;

In violation of Title 21, United States Code, Section 846; <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946).

<u>COUNT TWO</u>

**Conspiracy to Import into the United States Controlled Substance Analogues
Resulting in Death and Serious Bodily Injury**

From in or about January 2011 and continuously through August 2012, in the

Districts of North Dakota, Minnesota, Mississippi, Southern District of Texas, and

elsewhere,

CHARLES WILLIAM CARLTON and
BYRON JOSEPH LANDRY, a/k/a TRIPLESCREW,

did knowingly and intentionally combine, conspire, confederate, and agree together with

Andrew Michael Spofford, et al., currently indicted in the District of North Dakota,

Southeastern Division, Case No. 3:12-cr-80, and others, both known and unknown to the

grand jury, to unlawfully import into the United States the following controlled substance

analogues, as defined in 21 U.S.C. § 802(32), knowing the substances were intended for

human consumption as provided in 21 U.S.C. § 813:

1.  N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine,

also known as 2C-I-NBOMe or 25I-NBOMe, a controlled substance

analogue of 2,5-Dimethoxy-4-bromophenethylamine, also known as

2C-B, a Schedule I controlled substance;

2.  4-Chloro-2,5-dimethoxy-amphetamine, also known as DOC, a

controlled substance analogue of 2,5-Dimethoxy-4-methyl-amphetamine,

also known as DOM, a Schedule I controlled substance;

14

3.  2-(Ethylamino)-2-(3-methoxyphenyl)cyclohexanone, also known as MXE or Methoxetamine, a controlled substance analogue of N-ethyl-1-phenylcyclohexylamine, also known as 3-Eticyclidine or PCE, a Schedule I controlled substance;

4.  6-(2-Aminopropyl)-2,3-dihydrobenzofuran, also known as 6-APDB, a controlled substance analogue of MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance;

5.  1-(1-Benzofuran-6-yl)propan-2-amine, also known as 6-APB, a controlled substance analogue of MDA (3,4-methylenedioxy-amphetamine), a Schedule I controlled substance;

6.  4-Acetoxy-N, N-dimethyltryptamine, also known as 4-AcO-DMT, a controlled substance analogue of Psilocyn (4-hydroxy-N,N-dimethytriptamine), a Schedule I controlled substance;

7.  4-Fluoro-amphetamine, also known as 4-FA, a controlled substance analogue of amphetamine, a Schedule II controlled substance;

8.  4-Fluoro-methamphetamine, also known as 4-FMA, a controlled substance analogue of methamphetamine, a Schedule II controlled substance;

9.  2-Fluoro-amphetamine, also known as 2-FA, a controlled substance analogue of amphetamine, a Schedule II controlled substance;

10.  2-Fluoro-methamphetamine, also known as 2-FMA, a controlled substance analogue of methamphetamine, a Schedule II controlled substance;

11.  5-Methoxy-N,N-diallytryptamine, also known as 5-MeO-DALT, a controlled substance analogue of 5-Methoxy-N,N-diisopropyltryptamine (5-MeO-DiPT), a Schedule I controlled substance;

12.  N-(2-methoxybenzyl)-4-chloro-2,5-dimethoxyphenethylamine, also known as 2C-C-NBOMe or 25C-NBOMe, a controlled substance analogue of 2,5-Dimethoxy-4-bromophenethylamine, also known as 2C-B, a Schedule I controlled substance;

13.  4-Methyl-N-Ethylcathinone, also known as 4-MEC, a controlled substance analogue of Methcathinone, a Schedule I controlled substance;

14.  2-(Methylamino)-1-phenyl-pentane-1-one, also known as Pentadrone, a controlled substance analogue of Methcathinone, a Schedule I controlled substance;

15.  4'-Methyl-pyrrolidinopropiophenone, also known as MePPP, a controlled substance analogue of Methylenedioxypyrovalerone (MDPV), a Schedule I controlled substance;

16

16.   alpha-Pyrrolidinopentiophenone, also known as PVP, a controlled

substance analogue of Methylenedioxypyrovalerone (MDPV), a

Schedule I controlled substance; and

17.   Additional analogues of  2,5-Dimethoxy-4-bromophenethylamine,

also known as 2C-B, a Schedule I controlled substance, which includes,

but is not limited to:  2C-E, 2C-C, 2C-I, 2C-H, and 2C-P, which after July 9,

2012, became Schedule I controlled substances as part of the Food and Drug

Administration Safety and Innovation Act.

The distribution of  N-(2-methoxybenzyl)-4-iodo-2,5-dimethoxyphenethylamine,

also known as 2C-I-NBOMe or 25I-NBOMe, resulted in serious bodily injury and death.

<u>Overt Acts</u>

In furtherance of this conspiracy and to effect and accomplish the objects of it, one

or more of the conspirators committed the following overt acts:

1.  CHARLES WILLIAM CARLTON used an internet based business named

Motion Resources LLC, also known as Motion Research and Resources in Motion,

located in Houston, Texas, to facilitate the unlawful importation of controlled substance

analogues from sources of supply in various countries including, but not limited to:

China, United Kingdom, Austria, Poland, Greece, Spain, and Canada.  These substances

were then unlawfully distributed all over the United States as part of the conspiracy

alleged in Count One;

2.  The purpose and intent of the importation of the controlled substance analogues was to distribute them for human consumption in the United States, and CHARLES WILLIAM CARLTON and other co-conspirators did derive substantial income and gross receipts from the unlawful activities, that is, the primary objective of this conspiracy was to make money through the importation and distribution of illegal drugs;

3.  To avoid law enforcement, members of the conspiracy requested the international shipments of the substances to be sent to different addresses in the United States on different dates to decrease the likelihood of interception of the packages by United States law enforcement;

4.  Members of the conspiracy paid the international sources of supply on numerous occasions using various financial transactions including, but not limited to, money wires and bank transfers;

5.  The unlawful activities related to the unlawful importation of the controlled substance analogues resulted in the deaths and serious bodily injury as alleged in Count One.

In violation of Title 21, United States Code, Sections 813, 952(a), 960(b)(3), and 963; and Title 18, United States Code, Section 2; Pinkerton v. United States, 328 U.S. 640 (1946);

<u>COUNT THREE</u>

**Conspiracy to Cause the Introduction of a Misbranded Drug into
Interstate Commerce**

The Grand Jury Further Charges:

In or about January 2011 through August 2012, in the Districts of North Dakota,

Mississippi, Southern District of Texas, and elsewhere,

CHARLES WILLIAM CARLTON;
JOHN ROBERT POLINSKI; and
BYRON JOSEPH LANDRY, a/k/a TRIPLESCREW,

did knowingly and intentionally combine, conspire, confederate, and agree together with

Andrew Michael Spofford, et al., currently indicted in the District of North Dakota,

Southeastern Division, Case No. 3:12-cr-80, and others, both known and unknown to the

grand jury, with the intent to defraud and mislead, to cause to be introduced and delivered

for introduction into interstate commerce from outside of the United States to the states of

Texas, Mississippi, North Dakota, and elsewhere, the misbranded drugs as listed in Counts

One and Two, said drugs being misbranded within the meaning of:

a.  Title 21, United States Code, Section 352(f)(1), in that their

labeling did not bear adequate directions for use; and

b.  Title 21, United States Code, Section 352(f)(2), in that their

labeling did not bear adequate warnings;

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), and

352, and Title 18, United States Code, Sections 371 and 2.

19

**Forfeiture Allegation**

The Grand Jury Further Finds Probable Cause That:

Upon the conviction of CHARLES WILLIAM CARLTON of any one of the controlled substance offense alleged in Counts One and Two, in violation of Title 21, United States Code, Sections 846 and 952,

CHARLES WILLIAM CARLTON

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the violations and any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of the violations alleged in Counts One and Two of this Indictment, including, but not limited to the following:

$385,000 in United States Currency

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of said defendant up to the value

of the forfeitable property described above;

In violation of Title 21, United States Code, Section 853.

A TRUE BILL:


/s/ Grand Jury Foreperson
Foreperson


/s/ Timothy Q. Purdon
TIMOTHY Q. PURDON
United States Attorney

CCM:ld